## Garth v. Dickinson, et al.

(Decided April 12, 1917.)

Appeal from Todd Circuit Court.

Principal and Agent—Failure of Proof.—The evidence wholly fails to show that the merchandise account sued on was created by an authorized agent of the judgment defendant.

PETRIE & STANDARD for appellant.

SELDEN Y. TRIMBLE and TRIMBLE & BELL for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Dickinson, as surviving partner of the firm of P. E. Bacon & Company, brought this suit against the appellant, Mrs. Garth, and her husband, Anderson Garth, to recover $352 alleged to be due by them for goods, wares and merchandise. The petition averred that the Garths were husband and wife, and that in purchasing the articles Anderson Garth was acting as the agent of his wife.

Anderson Garth, in a separate answer, denied that he purchased any of the merchandise as the agent of his wife, and also pleaded limitation. His answer was really an admission that he had purchased the merchandise and was liable for it, except that the account was barred by limitation.

Mrs. Garth, in a separate answer, denied that her husband bought any of the merchandise as her agent, and averred that it was sold and delivered to her husband on his own account, and further pleaded the statute of limitation.

On a trial before a jury there was a directed verdict against Anderson Garth, and the jury having returned a verdict against Mrs. Garth for the full amount of the account, judgment was entered against her, and from this judgment she appeals.

The account is made up principally of charges for bran and screenings, but there are some charges for meal and flour. The first article charged was purchased on July 12, 1909, and the last on February 24, 1911, and the suit was filed in December, 1914.

The evidence shows that some of the merchandise was ordered personally by Mrs. Garth and some of it was purchased by Anderson Garth in person, but the case was practiced for the plaintiff on the theory that all the articles were purchased by Anderson Garth as the agent of his wife, and it was upon this theory that the court instructed the jury and that the jury found a verdict against Mrs. Garth. No attempt was made to hold Mrs. Garth liable on the ground that she personally purchased any of the articles on the account. It might also be here noticed that the plaintiff and his partner were merchants and that the account was barred by limitation, unless it was taken out of the statute by the promise of her husband as her authorized agent to pay it, and the court so instructed the jury.

From this brief statement it will be seen that the correctness of the judgment depends on the question whether Anderson Garth, acting as the authorized agent of his wife, bought the merchandise and promised to pay for it.

Mrs. Garth, as well as her husband, in their testimony denied that any of the merchandise was bought by him as her agent, and the only evidence for the plaintiff upon the issue as to whether the merchandise was sold to Garth individually or as the authorized agent of his wife is the testimony of Dickinson, the surviving partner

of the firm that sold the merchandise, and Cocke, who clerked for them during the time covered by the sales.

Dickinson testified that the original account on the books of the firm was charged to Anderson Garth; that no account or item of the account was ever charged to Mrs. Garth, nor was any statement of it sent to her. It further appears in his evidence that some time after the account had been closed he sent a letter to Mrs. Garth concerning the account. This was the only letter ever written to her in reference to the account, and she was never personally asked to pay any part of it, nor was payment of the account ever mentioned to her at any time except in the letter. She did not answer the letter, nor did she at any time or in any manner promise to pay the account. It further appears that in July, 1909, Anderson Garth individually executed his note for $138.80, the amount then due on the account, and that Mrs. Garth was not requested to sign this note, nor was anything ever said to her about it. It is further shown that the note was discounted to the Bank of Trenton, and although no part of the principal was ever paid, Anderson Garth paid the interest for several years and until the note was finally taken up by the firm on account of the failure of Garth to pay it.

It is further shown by the evidence of Dickinson that a great many statements of the account were sent to Garth and he was requested many times to pay it, and that he made many promises to do so. Dickinson further testified that he had been in business for some twelve or fourteen years and during all of this time Garth did business with the firm, and all accounts concerning business transactions were made out against him. He testified that the credit was extended to Mrs. Garth, but all the facts and circumstances disclosed in his evidence contradict this assertion.

Cocke, who was working for the firm of Bacon & Co. as either manager or clerk during this time, sold a considerable part of the merchandise charged on the account and said that he could not say whether the merchandise was sold on the faith of her credit or on the faith of the credit of Anderson Garth, nor did he know whether he was acting as the agent of his wife or not.

There is other evidence in the record tending to show that Garth individually transacted a good deal of business as a trader and as a buyer and seller of stock. At

some stores he bought merchandise and paid for it himself, and at other times merchandise bought by him was paid for by checks of his wife. It also appears that in the management of a farm at one time owned by his wife he transacted the business connected with the sale and purchase of produce and stock. It also seems that for many years the Garths transacted their business with the Bank of Trenton, at which bank he had an account and Mrs. Garth also had an account, and sometimes checks would be drawn on Mrs. Garth's account by Garth as agent.

Briefly restating it, the substance of this evidence and the other evidence is that Garth transacted a good deal of business as a trader, buying and selling stock in his own name, and also transacted business for his wife, after she became the owner of a little farm, which, however, did not take place until this account had been running for more than a year, and that occasionally he gave checks on her account signed by him as her agent. There is no evidence that Mrs. Garth ever authorized her husband to buy any of this merchandise for her or that she was ever in any way requested to pay for any of it or that he had any general authority as her agent to make this account. The account started in July, 1909, and ran until February, 1911, but during all this time no effort was ever made to collect any part of it from Mrs. Garth, nor did she ever promise to pay any part of it, nor was any statement of the account sent to her. It was not until some time after the account was closed that the letter spoken of by Dickinson was written, and his evidence, taken in connection with the evidence of Mrs. Garth, shows very clearly that this letter was merely an effort to get Mrs. Garth's assistance in the collection of the account. The account was made out against Anderson Garth individually and a note for a part of it was taken from him individually.

We think the evidence was wholly insufficient to authorize a judgment against Mrs. Garth and that the motion for a peremptory instruction on her behalf should have been sustained. Clearly the effort to charge her with the account was not thought of until after all means to collect it from Garth had failed.

Wherefore, the motion for an appeal is granted, and if on another trial the evidence is substantially the same

as appears in this record, the court should instruct the jury to find a verdict for Mrs. Garth. The judgment is reversed with directions to proceed in conformity with this opinion.